VERSO LAW GROUP LLP
GREGORY S. GILCHRIST (State Bar No. 111536)
RYAN BRICKER (State Bar No. 269100)
209 Kearny Street, Third Floor
San Francisco, California 94108
Telephone:   (415) 534-0495
Facsimile:   (270) 518-5974
Email:        greg.gilchrist@versolaw.com
              ryan.bricker@versolaw.com

Attorneys for Plaintiff
PATAGONIA, INC.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| PATAGONIA, INC.,<br><br>                    Plaintiff,<br><br>    v.<br><br>KIRILLWASHERE LLC, KIRILL'S BIG BRAIN, LLC, AND KWH MERCHANDISING INC. dba LINDA FINEGOLD,<br><br>                    Defendants. | Case No. 2:22-cv-1949<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, DILUTION, COPYRIGHT INFRINGEMENT**<br><br>**JURY TRIAL DEMAND** |

This lawsuit is necessary to stop Defendants from infringing, misusing, and trading on Patagonia, Inc.'s famous trademarks. Defendants are selling apparel and other products bearing identical copies of Patagonia's P-6 logo design (reproduced twice as a mirror image), replacing Patagonia's PATAGONIA trademark with Defendants' own "Assholes Live Forever" trademark together with a profane replica of Patagonia's mark. To prevent further damage to Patagonia and its brand, Patagonia alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1.     Patagonia, Inc. ("Patagonia") is a California corporation headquartered at 259 West Santa Clara Street, Ventura, California 93001. Patagonia has been designing, developing, marketing, and selling outdoor apparel, accessories, and

active sportswear for nearly fifty years.  Patagonia's PATAGONIA brand and P-6 logo are famous in the United States and around the world, and instantly recognized by consumers as a symbol of innovative apparel designs, quality products, and environmental and corporate responsibility.

2.     Kirill's Big Brain, LLC ("KBB") is a New York limited liability company with its principal place of business at 100 Wall Street, 20th Floor, New York, NY 10005.

3.     KirillWasHere LLC ("KWH LLC") is a New York limited liability company with its principal place of business at 412 West 48th Street, Apt. 42, New York, NY 10036.

4.     KWH Merchandising Inc. dba Linda Finegold ("KWH Merch") is a California corporation with a registered address at 2 Greenacre Court, Syosset, New York 11791, and a principal place of business at 5404 Whitsett Avenue, Suite #191, Valley Village, CA 91607.

5.     On information and belief, KBB, KWH LLC, and KWH Merch share common ownership and are under common control, and have worked together to produce and commercialize the infringing products addressed in this Complaint. KBB, KWH LLC, and KWH Merch are collectively referenced in this Complaint as "Defendants."

6.     Defendants offer, promote, and sell products that infringe Patagonia's intellectual property rights through a variety of channels, including online through their website at www.lindafinegold.com and their social media accounts, including the @kirillagain Instagram account and /r/kirillwashere Subreddit.

7.     Patagonia's trademark claims arise under the Trademark Act of 1946 (the Lanham Act), as amended by the Trademark Dilution Revision Act of 2006 (15 U.S.C. §§ 1051, *et seq.*).  Patagonia's claims for copyright infringement arise from Defendants' infringement of Patagonia's exclusive rights under the United States Copyright Act (17 U.S.C. §§ 101, *et seq.*).  This Court has jurisdiction over

such claims pursuant to 28 U.S.C. §§ 1338(a) and 1338(b) (trademark and unfair competition), 17 U.S.C. § 501 (copyright), 28 U.S.C. § 1331 (federal question), and 15 U.S.C. § 1121 (Lanham Act).  This Court has jurisdiction over the state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction) and 28 U.S.C. § 1332 (diversity).

8.     This Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves of the privilege of doing business in this district.  Defendant KWH Merch is located in this district, and is identified as an entity responsible for sales from lindafinegold.com on the website's FAQ section (see below).

Please send your return with your packing slip/invoice to:

LINDA FINEGOLD / KIRILL WAS HERE
ATTN: RETURNS
5404 Whitsett Avenue Suite #191
Valley VIllage, CA 91607

9.     Defendant KBB is the applicant and purportedly the owner of the ASSHOLES LIVE FOREVER trademark, which Defendants have used within copies of Patagonia's famous trademark and copyrighted design on their infringing products.  Defendants sell and ship such infringing products to customers in this district.  Defendants advertise and promote their infringing products to purchasers in California and this district through their website and social media accounts, which are accessible to residents of this district.  Defendants also have directed their conduct into this district, including individually targeting Patagonia, a corporation with its principal place of business in this district, by infringing Patagonia's trademarks and copyrights.

10.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and 1400(a) because KWH Merch is located in this district, and because Defendants infringe Patagonia's intellectual property in this district, transact business in this district, and

a substantial part of the events giving rise to the claims asserted arose in this district.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

**The History of Patagonia**

11.     Patagonia was founded in the late 1960s to design and sell climbing clothes and other active sportswear.  The company adopted the brand "PATAGONIA" to differentiate another business that designed and manufactured climbing gear and tools.  PATAGONIA was chosen as the trademark to call to mind romantic visions of glaciers tumbling into fjords, jagged windswept peaks, gauchos, and condors.  Since at least 1973, the PATAGONIA brand has appeared on a multi-colored label inspired by a silhouette of the jagged peaks of the Mt. Fitz Roy skyline (the "P-6 logo").

12.     In the nearly fifty years since Patagonia's business started, the PATAGONIA brand and its P-6 logo have become among the most identifiable brands in the world.  Patagonia's products now include a wide range of apparel products and equipment, including technical products designed for climbing, skiing and snowboarding, surfing, fly fishing, and trail running, as well as sportswear, which are sold around the world.

13.     Over the years, Patagonia has been recognized and honored for its business initiatives, including receiving the Sustainable Business Counsel's first "Lifetime Achievement Award."  In 1996, with an increased awareness of the dangers of pesticide use and synthetic fertilizers used in conventional cotton growing, Patagonia began the exclusive use of organically grown cotton and has continued that use for more than twenty years.  It was a founding member of the Fair Labor Association®, which is an independent multi-stakeholder verification and training organization that audits apparel factories.  Additionally, since 1985 Patagonia has pledged 1% of sales to environmental groups to preserve and restore our natural environment, donating more than $100 million to date.  In 2002, Patagonia's founder, Yvon Chouinard, along with others, created a non-profit called

1% For the Planet® to encourage other businesses to do the same. Today, more than 1,200 member companies have donated more than $150 million to more than 3,300 nonprofits through 1% For the Planet. In 2012, Patagonia became one of California's first registered Benefit Corporations, ensuring Patagonia could codify into its corporate charter consideration of its workers, community, and the environment. In 2016, Patagonia pledged to donate all revenue from sales on Black Friday, donating $10 million to environmental grantees in response to customers' purchases on that day. In 2018, Patagonia pledged an additional $10 million in grants to environmental groups in response to recent tax cuts given to businesses. Over the course of two weeks in December 2019, Patagonia matched another $10 million in donations to environmental and other grassroots organizations.

**Patagonia's Trademarks**

14.     Patagonia owns numerous registrations for its distinctive P-6 logo and PATAGONIA trademark, covering a wide-ranging assortment of products. Among these are the following U.S. trademark registrations:

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
| **PATAGONIA** | 1189402 / Feb. 9, 1982 | Men's and Women's Clothing-Namely, Sweaters, Rugby Shirts, Walking Shorts, Trousers, Jackets, Mittens, Hoods and Rainwear. | 08/1974 |
|  | 1294523 / Sept. 11, 1984 | Men's, Women's and Children's Clothing-Namely, Jackets, Pants, Vests, Gloves, Pullovers, Cardigans, Socks, Sweaters, Underwear, Shirts, Shorts, Skirts and Belts | 08/1974-1981 |
| | 1547469 / July 11, 1989 | Men's, Women's and Children's Clothing- Namely, Jackets, Pants, Shirts, Sweaters, Vests, Skirts, Underwear Tops and | 08/1974-1981 |

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
|  | | Bottoms, Socks, Gloves, Mittens, Hats, Face Masks, Balaclava, Gaiters, Suspenders, and Belts | |
|  | 1775623 / June 8, 1993 | Luggage back packs, and all-purpose sports bags | 08/1988 |
| PATAGONIA | 1811334 / Dec. 14, 1993 | Luggage, back packs, fanny packs and all-purpose sport bags, footwear, ski bags and ski gloves | 08/1990 |
| PATAGONIA | 2260188 / July 13, 1999 | Computerized on-line ordering activities in the field of clothing and accessories; Providing information in the field of technical clothing and accessories for use in recreational, sporting and leisure activities; providing information in the field of existing and evolving environmental issues | 10/1995 |
| PATAGONIA.COM | 2392685 / Oct. 10, 2000 | On-line retail store and mail order services featuring technical clothing, footwear, and accessories; Computer services in the nature of on-line information related to the environment and clothing | 10/1995 |
| PATAGONIA | 2662619 / Dec. 17, 2002 | Retail store services featuring clothing, footwear, luggage and a wide variety of sporting goods and accessories | 06/1986 |
| PATAGONIA | 5491401 / June 12, 2018 | Reusable bottles sold empty; insulated containers for food or beverage for domestic use; | 09/2014 |

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
| | | cups, mugs and growlers | |
| **PATAGONIA** | 5561006 / Sept. 11, 2018 | Stickers; paper banners; fiction and non-fiction books on a variety of topics; posters; non-magnetically encoded gift cards; photographs | 12/1991 |

These registrations for the PATAGONIA mark and logos are in full force and effect.  The registrations have become incontestable under 15 U.S.C. § 1065.  A color image of the P-6 logo follows:



Collectively, these marks, Patagonia's other registered trademarks, and its common law marks are referred to as the "PATAGONIA trademarks."  Patagonia also owns a registered copyright (Registration No. VA 1-801-788) for the P-6 logo.

15.     The PATAGONIA trademarks are distinctive, arbitrary and fanciful, entitled to the broadest scope of protection, and certain of the PATAGONIA trademarks are registered worldwide.

16.     For many years prior to the events giving rise to this Complaint and continuing to the present, Patagonia annually has spent enormous amounts of time, money, and effort advertising and promoting the products on which its PATAGONIA trademarks are used.  PATAGONIA brand products are advertised in a variety of contexts and media, including in print and on the Internet.  In addition to advertising by Patagonia, the PATAGONIA trademarks are also advertised and promoted and presented at point of sale by numerous retailers.  Consumers, accordingly, are

exposed to the PATAGONIA trademarks in a wide range of shopping and post-sale contexts.

17.     Patagonia has sold its PATAGONIA brand products all over the world, including throughout the United States and California.  Through its promotion and investment in its brand and extensive sales, publicity, awards, and leadership in sustainable sourcing practices, Patagonia has acquired enormous goodwill in its PATAGONIA trademarks.  The PATAGONIA trademarks are famous within the meaning of the Trademark Dilution Revision Act, enjoy strong consumer recognition, and are recognized around the world and throughout the United States by consumers as signifying high quality products made by a responsible company.

**Defendants' Infringement of Patagonia's Rights**

18.     In blatant disregard of Patagonia's rights in the PATAGONIA trademarks – and without authorization from Patagonia – Defendants have promoted, offered for sale, and sold products, including shirts, hoodies, sweatpants, and hats, bearing designs and logos that reproduce – in mirror image – the P-6 logo, replacing Patagonia's PATAGONIA word mark with (a) Defendants' own purported "Assholes Live Forever" mark and a profane replica of Patagonia's PATAGONIA mark rendered in Patagonia's distinctive font and stylization. Defendants' designs and logos, and the products bearing them, are referred to as the "Kirill Designs" and shown by example in Paragraph 20 below.

19.     Removing any doubt that Defendants are using the infringing Kirill Designs as their own trademark – and therefore co-opting Patagonia's famous P-6 logo as their own – Defendant KBB has represented in USPTO filings that it owns the "Assholes Live Forever" mark and that the mark exclusively identifies KBB as the source of, e.g., t-shirts, sweatshirts, pants, and beanies (Ser. No. 90/033,810).  In a USPTO filing dated November 10, 2021, KBB stated that its use of "Assholes Live Forever" functions as a trademark in part because "Applicant uses the Mark in a celebratory and shocking manner," further confirming that the profane and

infringing Kirill Designs are intended by Defendants to operate as Defendants' trademark.

20.    Examples of Defendant's products bearing the Kirill Designs follow:

| No. | Kirill Designs |
|-----|----------------|
| 2 |  |
| 3 | |



21.     The Kirill Designs are identical to – and at minimum substantially similar to – the P-6 logo artwork, and nearly identical to the registered P-6 logo trademark, only replacing the PATAGONIA word mark with "Assholes Live Forever" and a profane replica of the PATAGONIA mark.  Defendants' products bearing the Kirill Designs are identical to and compete directly with goods sold by Patagonia, including, shirts, hoodies, sweatpants, and beanies.

22.     Defendants' use of the Kirill Designs has caused or will cause a likelihood of confusion among consumers regarding the source of Defendants' products, and whether Patagonia has sponsored, licensed, authorized, or is somehow affiliated with Defendants.

23.     Defendants began using the Kirill Designs long after the PATAGONIA trademarks became famous.  The Kirill Designs have caused or are likely to cause dilution of Patagonia's famous and distinctive marks by diminishing their distinctiveness and singular association with Patagonia.  Patagonia has no alternative but to protect its goodwill and famous trademark by obtaining an injunction against Defendants' further use of the derivative trademark and designs.

24.     Patagonia is informed and believes that Defendants have marketed and sold substantial quantities of products bearing the Kirill Designs, and have profited and continue to profit from such sales.

25.     There is no doubt that the Defendants' coordinated conduct has been willful.  First, Defendants adopted a mark and logo that copies the PATAGONIA trademarks as part of Defendants' own branding.  Further, Defendants represented to Patagonia – through counsel – that they ceased selling products bearing the Kirill Designs, including on January 13, 2022, and again on March 1, 2022.  Contrary to these representations, on which Patagonia relied in deciding against filing this Complaint sooner, Patagonia discovered that Defendants were continuing to sell products bearing the Kirill Designs on March 14, 2022, as shown below. Defendants, on their Instagram account, promoted the Kirill Designs as a "LOGO we made," and stated that "[o]ur lawyers made us remove [the designs] but nothing is stopping me from offering the box I am offering you tonight.  Go look at the 1st item on the site."  At the time, the "first item" on Defendants' www.lindafinegold.com website was the "Shit We Are Not Legally Allowed to Show You" "mystery box" shown below.  Defendants acknowledge that their willful infringement openly, promoting the product as illegal.

/ / /

/ / /

/ / /



## SHIT WERE NOT ALLOWED TO SELL U 4.0 • MYSTERY BOX

$49.00

or 4 interest-free payments of **$12.25**. Get $5 back on your first purchase with  sezzle ⓘ

SIZE

| S | M | L | XL | 2XL |

| 3XL |

QUANTITY

| − | 1 | + |

**ADD TO CART**

Included in this mystery box:

A BUNCH OF COOL SHIT WE'RE ALLOWED TO SELL FOR OBVIO... REASONS





26.     Defendants' actions have caused and will cause Patagonia irreparable harm for which money damages and other remedies are inadequate.  Unless Defendants are restrained by this Court, Defendants will continue expanding its illegal activities and otherwise continue to cause irreparable damage and injury to Patagonia by, among other things:

a.     Depriving Patagonia of its statutory rights to use and control use of its trademark;

b.     Creating a likelihood of confusion, mistake, and deception among consumers and the trade as to the source of the infringing products;

c.     Causing the public falsely to associate Patagonia with Defendants and/or their products, or vice versa;

d.     Causing the public falsely to believe Patagonia has collaborated, co-branded, or is otherwise associated with Defendants and/or their "Assholes Live Forever"-branded products, or vice versa;

e.     Causing incalculable and irreparable damage to Patagonia's goodwill and diluting the capacity of its famous PATAGONIA trademarks to differentiate its products from those of its competitors;

f.     Causing incalculable and irreparable damage to Patagonia's licensing and collaboration programs, and to Patagonia's ability to control its brand partnerships and to associate itself with entities who are specifically aligned to Patagonia's company mission; and

g.     Causing Patagonia to lose sales of its genuine PATAGONIA products.

27.     Accordingly, in addition to other relief, Patagonia is entitled to injunctive relief against Defendants.

/ / /

/ / /

/ / /

### FIRST CLAIM

### FEDERAL TRADEMARK INFRINGEMENT

### (15 U.S.C. §§ 1114-1117)

28.    Patagonia realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 27 of this Complaint.

29.    Defendants have used, in connection with the sale, offering for sale, distribution, or advertising of their products bearing the Kirill Designs, words and symbols that infringe upon Patagonia's PATAGONIA trademarks.

30.    These acts of trademark infringement have been committed with the intent to cause confusion, mistake, or deception, and are in violation of 15 U.S.C. § 1114.

31.    As a direct and proximate result of Defendants' conduct, Patagonia is entitled to recover up to treble the amount of Defendants' unlawful profits and Patagonia's damages and an award of attorneys' fees under 15 U.S.C. § 1117(a).

32.    Patagonia is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) that requires Defendants to stop use of the Kirill Designs, and any other mark or design similar to the PATAGONIA trademarks.

### SECOND CLAIM

### FEDERAL UNFAIR COMPETITION

### (False Designation of Origin and False Description – 15 U.S.C. § 1125(a))

33.    Patagonia realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 32 of this Complaint.

34.    Defendants' conduct as alleged in this Complaint constitutes the use of symbols or devices tending falsely to describe the infringing products, within the meaning of 15 U.S.C. § 1125(a)(1).  Defendants' conduct is likely to cause confusion, mistake, or deception by or in the public as to the affiliation, connection, association, origin, sponsorship, or approval of the infringing products to the detriment of Patagonia and in violation of 15 U.S.C. § 1125(a)(1).

35.     As a direct and proximate result of Defendants' conduct, Patagonia is entitled to recover up to treble the amount of Defendants' unlawful profits and Patagonia's damages, and an award of attorneys' fees under 15 U.S.C. § 1117(a).

36.     Patagonia is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) that requires Defendants to stop use of the Kirill Designs, and any other mark or design similar to the PATAGONIA trademarks.

## THIRD CLAIM

## FEDERAL DILUTION OF FAMOUS MARK

### (Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c))

37.     Patagonia realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 36 of this Complaint.

38.     Patagonia's PATAGONIA trademarks (including the P-6 logo) are distinctive and famous within the meaning of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c), and were famous prior to Defendants' adoption of the copycat Kirill Designs.

39.     Defendants' conduct is likely to cause dilution of Patagonia's PATAGONIA trademark by diminishing its distinctiveness in violation of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c).

40.     As a direct and proximate result of Defendants' conduct, Patagonia is entitled to recover up to treble the amount of Defendants' unlawful profits and Patagonia's damages, and an award of attorney's fees under 15 U.S.C. §§ 1116(a), 1117(a), and 1125(c).

41.     Patagonia is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116(a) and 1125(c) that requires Defendants to stop use of the Kirill Designs, and any other mark or design similar to the PATAGONIA trademarks.

/ / /

/ / /

/ / /

## **FOURTH CLAIM**

## **FEDERAL COPYRIGHT INFRINGEMENT**

### **(17 U.S.C. §§ 101, *et seq*., and 17 U.S.C. §§ 501, *et seq*.)**

42.     Patagonia realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 41 of this Complaint.

43.     Patagonia owns the copyright in its P-6 logo, which is federally registered and was registered prior to Defendants' copying.

44.     Defendants have copied, advertised, offered for sale, and/or sold identical or substantially similar copies of the P-6 logo without Patagonia's authorization or permission and in violation of Patagonia's exclusive rights in its copyright.

45.     Defendants' unlawful reproduction, advertisement, distribution, and/or sale of Patagonia's proprietary design constitutes copyright infringement.  Patagonia alleges that Defendants acted intentionally and in bad faith when they reproduced Patagonia's copyrighted work (in identical or substantially similar form), and advertised, distributed, displayed, and/or sold products bearing the Kirill Designs.

46.     Defendants' infringement alleged herein has caused and, if not enjoined, will continue to cause Patagonia to suffer irreparable harm for which there is no adequate remedy at law, and has also caused damage to Patagonia in an amount which cannot be accurately computed at this time but will be proven at trial.

47.     As a direct and proximate result of Defendants' conduct, Patagonia is entitled to injunctive relief, as well as actual damages and any profits earned by Defendants as a result of their infringement, or statutory damages of up to $150,000 for each work infringed, at Patagonia's election, pursuant to 17 U.S.C. § 504.

/ / /

/ / /

/ / /

# FIFTH CLAIM

## TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

## UNDER CALIFORNIA STATUTORY LAW

**(Cal. Bus. & Prof. Code §§ 14200 *et seq.*; Cal. Bus. & Prof. Code § 17200 *et seq.*)**

48.     Patagonia realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 47 of this Complaint.

49.     Patagonia is the owner of numerous registrations for the PATAGONIA trademarks, as well as common law rights in those marks.

50.     Defendants are using a design that infringes upon Patagonia's PATAGONIA trademarks without the consent of Patagonia and in connection with the sale, offering for sale, distribution, or advertising of its products bearing the Kirill Designs.

51.     Defendants' infringement of Patagonia's PATAGONIA trademarks is likely to cause confusion, mistake, and deception as to the source of the origin of Defendants' offerings.

52.     Defendants use the infringing Kirill Designs to enhance the commercial value of their offerings.

53.     Defendants' acts violate Patagonia's trademark rights under California Business & Professions Code §§14245 *et seq.*

54.     Defendants' conduct as alleged in this Complaint also constitutes "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising" within the meaning of California Business & Professions Code §§ 17200 *et seq.*

55.     Patagonia is entitled to monetary damages and injunctive relief prohibiting Defendants from using the Kirill Designs, or any other mark or design that is likely to be confused with the PATAGONIA trademarks.

56.     Without injunctive relief, Patagonia has no means by which to control

1    the continuing injury to its reputation and goodwill or that of its PATAGONIA

2    trademarks.  Patagonia has been and will continue to be irreparably harmed.  No

3    amount of money damages can adequately compensate Patagonia if it loses the

4    ability to control its marks.

5         57.    Because Defendants' actions have been committed willfully,

6    maliciously, and intentionally, Patagonia is entitled to treble the amount of

7    Defendants' unlawful profits and Patagonia's damages under California Business &

8    Professions Code § 14250.

9                              **SIXTH CLAIM**

10          **TRADEMARK DILUTION UNDER CALIFORNIA LAW**

11                    **(Cal. Bus. & Prof. Code § 14247)**

12        58.    Patagonia realleges and incorporates by reference each of the

13   allegations contained in paragraphs 1 through 57 of this Complaint.

14        59.    Patagonia owns valid and protectable rights in its PATAGONIA

15   trademarks (including the P-6 logo).

16        60.    The PATAGONIA trademarks – registered marks in the state of

17   California – are distinctive and famous within the meaning of the California Model

18   State Trademark Law, Cal. Bus. & Prof. Code § 14247, in that they are household

19   brands in California, and were famous prior to Defendants' adoption of the Kirill

20   Designs.

21        61.    Defendants' acts are likely to dilute the distinctive quality of the

22   PATAGONIA trademarks.  Defendants' acts therefore constitute trademark dilution

23   under California Business & Professions Code **§** 14247, the analogous statutes of

24   other states, and under California common law.

25        62.    Patagonia is entitled to monetary damages and injunctive relief

26   prohibiting Defendants from using the Kirill Designs, and any other mark or design

27   similar to the PATAGONIA trademarks.  Without injunctive relief, Patagonia has

28   no means by which to control the continuing dilution of the PATAGONIA

1  trademarks.  Patagonia has been and will continue to be irreparably harmed.  No

2  amount of money damages can adequately compensate Patagonia for such harm.

3       63.    Because Defendants' actions have been committed willfully,

4  maliciously, and intentionally, Patagonia is entitled to treble the amount of

5  Defendants' unlawful profits and Patagonia's damages under California Business &

6  Professions Code § 14250.

7  **SEVENTH CLAIM**

8  **TRADEMARK INFRINGEMENT UNDER CALIFORNIA COMMON LAW**

9       64.    Patagonia realleges and incorporates by reference each of the

10 allegations contained in paragraphs 1 through 63 of this Complaint.

11      65.    Patagonia owns valid and protectable rights in its PATAGONIA

12 trademarks at common law.

13      66.    Defendants' conduct is likely to cause confusion, to cause mistake, or

14 to deceive as to the source of goods offered by Defendants, or as to affiliation,

15 connection, association, sponsorship, or approval of such goods and services, and

16 constitutes infringement of Patagonia's PATAGONIA trademarks at common law.

17      67.    Defendants infringed Patagonia's PATAGONIA trademarks with

18 knowledge and intent to cause confusion, mistake, or deception.

19      68.    Defendants' conduct is aggravated by that kind of willfulness, wanton-

20 ness, malice, and conscious indifference to the rights and welfare of Patagonia for

21 which California law allows the imposition of exemplary damages.

22      69.    As a direct and proximate result of Defendants' activities, Patagonia

23 has suffered substantial damage.

24      70.    Unless restrained and enjoined, the conduct of Defendants will further

25 impair the value of the PATAGONIA trademarks and Patagonia's business

26 reputation and goodwill.  Patagonia has no adequate remedy at law.

27      71.    Patagonia is entitled to monetary damages and injunctive relief

28 prohibiting Defendants from using the Kirill Designs, and any other mark or design

1    similar to the PATAGONIA trademarks.

2        72.    Without injunctive relief, Patagonia has no means by which to control

3    the continuing injury to their reputation and goodwill or that of its PATAGONIA

4    trademarks.  Patagonia has been and will continue to be irreparably harmed.  No

5    amount of money damages can adequately compensate Patagonia if it loses the

6    ability to control its marks.

7        73.    Because Defendants' actions have been committed willfully,

8    maliciously, and intentionally, Patagonia is entitled to recover reasonable attorneys'

9    fees and compensatory and punitive damages.

10

11                        **PRAYER FOR JUDGMENT**

12        WHEREFORE, Patagonia prays that this Court grant it the following relief:

13        1.    Adjudge that the PATAGONIA trademarks have been infringed by

14    Defendants in violation of Patagonia's rights under 15 U.S.C. § 1114;

15        2.    Adjudge that the PATAGONIA trademarks have been infringed by

16    Defendants in violation of California statutory law;

17        3.    Adjudge that Patagonia's common law rights in the PATAGONIA

18    trademarks have been infringed;

19        4.    Adjudge that Defendants have competed unfairly with Patagonia in

20    violation of Patagonia's rights under 15 U.S.C. § 1125(a);

21        5.    Adjudge that Defendants have competed unfairly with Patagonia in

22    violation of California statutory law;

23        6.    Adjudge that Defendants' activities are likely to dilute Patagonia's

24    famous PATAGONIA trademarks in violation of Patagonia's rights under 15 U.S.C.

25    § 1125(c) and/or California law;

26        7.    Adjudge that Defendants have infringed Patagonia's copyright rights in

27    its P-6 design;

28        8.    Adjudge that Defendants and their agents, employees, attorneys,

COMPLAINT
CASE NO. 2:22-CV-1949                                           - 20 -

1   successors, assigns, affiliates, and joint venturers, and any person(s) in active

2   concert or participation with it, and/or any person(s) acting for, with, by, through or

3   under it, be enjoined and restrained at first during the pendency of this action and

4   thereafter permanently from:

5       a.   Manufacturing, producing, sourcing, importing, selling, offering

6   for sale, distributing, advertising, or promoting any goods or services that display

7   any words or symbols that so resemble the PATAGONIA trademarks as to be likely

8   to cause confusion, mistake, or deception, on or in connection with any product that

9   is not authorized by or for Patagonia, including, without limitation, any product or

10  service that bears the Kirill Designs, or any other approximation of Patagonia's

11  trademarks;

12      b.   Using any word, term, name, symbol, device, or combination

13  that causes or is likely to cause confusion, mistake, or deception as to the affiliation

14  or association of Defendants or their products with Patagonia, or as to the origin of

15  Defendants' goods, or any false designation of origin, false or misleading

16  description or representation of fact, or any false or misleading advertising, or likely

17  dilution of the PATAGONIA trademark;

18      c.   Further infringing the rights of Patagonia in and to its

19  PATAGONIA trademarks, or otherwise damaging Patagonia's goodwill or business

20  reputation;

21      d.   Further diluting the famous PATAGONIA trademarks;

22      e.   Otherwise competing unfairly with Patagonia in any manner;

23      f.   Further infringing Patagonia's copyright rights in its P-6 logo

24  design, including by reproducing, distributing, or displaying such logo or any other

25  logo or design that is substantially similar to the P-6 logo; and

26      g.   Continuing to perform in any manner whatsoever any of the

27  other acts complained of in this Complaint;

28      9.   Adjudge that Defendants are prohibited from applying to register any

other trademark or service mark which is likely to be confused with, or that dilutes the distinctive quality of, Patagonia's PATAGONIA trademarks;

10. Adjudge that Defendants are required immediately to deliver to Patagonia's counsel their entire inventory of infringing products, including without limitation, patches and any other products, packaging, labeling, advertising and promotional material, and all plates, patterns, molds, matrices and other material for producing or printing such items, that are in its possession or subject to their control and that infringe Patagonia's trademarks as alleged in this Complaint;

11. Adjudge that Defendants, within thirty (30) days after service of the Court's judgment, are required to file with this Court and serve upon Patagonia's counsel a written report under oath setting forth in detail the manner in which they have complied with the judgment;

12. Adjudge that Patagonia recover from Defendants its damages and lost profits, and Defendants' profits, in an amount to be proven at trial;

13. Adjudge that Defendants are required to account for any profits that are attributable to its illegal acts, and that Patagonia is awarded (1) Defendants' profits and (2) all damages sustained by Patagonia, under 15 U.S.C. § 1117, plus prejudgment interest;

14. Adjudge that the amounts awarded to Patagonia pursuant to 15 U.S.C. § 1117 shall be trebled;

15. Adjudge that Patagonia recover from Defendants its damages based on Defendants' copyright infringement, or statutory damages at Patagonia's election;

16. Order an accounting of and impose a constructive trust on all of Defendants' funds and assets that arise out of its infringing, dilutive, and/or breaching activities;

17. Adjudge that Patagonia be awarded its costs and disbursements incurred in connection with this action, including Patagonia's reasonable attorneys' fees and investigative expenses; and

18.     Adjudge that all such other relief be awarded to Patagonia as this Court deems just and proper.

DATED:  March 24, 2022          Respectfully submitted,

VERSO LAW GROUP LLP


By:   */s/Ryan T. Bricker*
         RYAN T. BRICKER

Attorneys for Plaintiff
PATAGONIA, INC.

1

## **DEMAND FOR JURY TRIAL**

2      Patagonia, Inc. demands that this action be tried to a jury.

3   DATED:  March 24, 2022              Respectfully submitted,

4                                       VERSO LAW GROUP LLP

5

6                                       By:   */Ryan T. Bricker*
                                              RYAN T. BRICKER
7

8                                       Attorneys for Plaintiff
                                        PATAGONIA, INC.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28